ORIGINAL

1  johnmanibusan2255

2  LEONARDO M. RAPADAS
   United States Attorney
3  KARON V. JOHNSON
   Assistant U.S. Attorney
4  Sirena Plaza, Suite 500
   108 Hernan Cortez Avenue
5  Hagåtña, Guam 96910
   PHONE: (671) 472-7332
6  FAX: (671) 472-7334

7  Attorneys for the United States of America

**FILED**

DISTRICT COURT OF GUAM

AUG 25 2006

**MARY L.M. MORAN
CLERK OF COURT**

8

9              IN THE UNITED STATES DISTRICT COURT

10               FOR THE TERRITORY OF GUAM

11

12  JOHN G. MANIBUSAN,                    )   CRIMINAL CASE NO. 89-00104
                                          )   CIVIL CASE NO. 06-00006
13                   Petitioner,          )
                                          )   **ANSWER TO MOTION TO**
14           vs.                          )   **VACATE, SET ASIDE, OR**
                                          )   **CORRECT SENTENCE**
15  UNITED STATES OF AMERICA,             )
                                          )
16                   Respondent.          )
                                          )
17

18          Pursuant to Rule 5 of the Rules governing Proceedings in the United States District

19  Courts under Title 28 U.S.C. § 2255, the United States opposes petitioner-defendant' motion to

20  Vacate, Set Aside, or Correct Sentence.

21                          PROCEDURAL HISTORY

22          The time line set forth below is supported by Exhibits A-E filed in defendant's September

23  7, 2005, Motion for Clarification of Sentence and Amendment of Written Judgment, and in

24  Exhibits 1-4 filed as part of the government's Response on October 14, 2005.

25          1987, defendant committed the crime of possession with intent to distribute heroin;

26          1989, defendant was incarcerated in the Guam Department of Corrections pending trial
            local charges of manslaughter, robbery and burglary;

27

28

July 12, 1989, defendant and 14 other people were indicted in the District Court for Conspiracy to distribute heroin. A copy of that indictment is attached hereto as Exhibit 1;

July 13, 1989, the District Court issued a Writ of Habeas Corpus Ad Prosequendum so that defendant could be brought into court for arraignment on federal charges;

September 13, 1989, defendant waived indictment and pled guilty to this offense through an information.. A copy of the plea colloquy is attached hereto as Exhibit 2;

March 16, 1990, defendant was sentenced on this offense to 12 years incarceration, and five years supervised release. Defendant never appealed;

March 19, 1990, defendant was returned to local custody, and the U.S. Marshals Service filed a detainer against him;

September 20, 1990, defendant was sentenced in the Superior Court of Guam to 10 years incarceration following his convictions for manslaughter, robbery and burglary;

April 21, 1999, defendant was released from the Guam Department of Corrections and transferred to the Bureau of Prisons;

June 8, 2005, defendant requested that the Bureau of Prisons consider him for parole;

August 12, 2005, the warden of FCI Talladega denied his request for parole on the grounds he was sentenced as a Sentence Reform Act inmate, and accordingly was not eligible for parole;

September 7, 2005, defendant filed a Motion for Clarification of Sentence and Amendment of Written Judgment concerning errors made in the judgment entered in this case March 16, 1990. These errors related to whether defendant's offense of conviction occurred prior the effective date of the Sentencing Guidelines, so that he was improperly sentenced to serve five years supervised release. Defendant also contended that he should have received credit against his federal sentence for time served on the local case. His authority was FRCrP 36.

March 13, 2006, defendant filed a Motion under 28 U.S.C. § 2255 to vacate, set aside or correct his sentence on the standard form provided for 2255 motions. He listed three grounds in support of his motion:

> 1) his plea was obtained in violation of Due Process, citing Santobello v. New York, 404 U.S. 257 (1971);
>
> 2) his plea was obtained in violation of Due Process, citing United States v. Meyers, 451 F.2d 402 (9th Cir. 1972); and
>
> 3) the court erred in sentencing defendant pursuant to the Sentencing Guidelines.

March 13, 2006, defendant filed a Motion to Amend and for Appointment of Counsel, which added arguments related to the merits of his 2255 motion;

March 28, 2006, defendant filed a Motion to Amend and Motion for Appointment of Counsel with arguments related to the timeliness of his 2255 motion and a third ground for his 2255 petition, ineffective assistance of counsel.

## ISSUES FOR REVIEW

On April 3, 2006, the Honorable Roger T. Benitez issued an order granting defendant's motions in part, based upon Federal Rules of Criminal Procedure 35 and 36. The court ordered his 1990 judgment amended in two respects: it redacted the language putting him on supervised release, and added the date of the offense to reflect 1987. A copy of the amended judgment is attached hereto as Exhibit 3.

The court also denied defendant's motion that he receive credit for time spend in custody serving his local sentence.

The court specifically reserved defendant's attack on the validity of his plea for subsequent proceedings pursuant to 28 U.S.C. § 2255. Thus, there are three 2255 claims presently before the court. First, defendant contends the government or court violated the terms of his guilty plea by failing to continue sentencing on his federal charge until after he had been sentenced on his local convictions. He asserts that had his federal sentencing been so continued, the district court judge would have had the discretion to run his sentences concurrently.

Second, the district court failed to advise him that his federal sentence could not run concurrently with the local, and affirmatively misled him by advising him that upon completion of the "trial" of his local matters, he would be turned over to the U.S. Marshals Service, causing defendant to believe that the sentences would be concurrent.

Third, his counsel was ineffective.

## I. THE PETITION IS NOT TIMELY FILED.

28 U.S.C. § 2255 ¶ 6 limits the filing of habeas corpus claims to one year. This one-year time limitation runs from the latest of:

"(1) the date on which the judgment of conviction becomes final;

(2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."

Defendant's 2255 claims all concern the fact that his federal sentence was consecutive to that of his local convictions. Yet defendant knew as of March 19, 1990, that this would be so. The U.S. Marshals detainer specifically advises that when "the subject is to be released from your custody, please notify this office at once so that we may assume custody if necessary."

If this was not enough, defendant certainly knew as of April 21, 1999, that his federal time was going to run consecutively to that served on the Guam charges, because he was transferred to a federal penitentiary. He acquiesced in this procedure, and did not initiate any action to contest his sentence until after his June 8, 2005, request for parole (Exhibit D of his September 7, 2005 Motion). Accordingly, defendant's petition should be denied because it was not filed within one year of the date on which the facts supporting his claim were discovered.

II. THE GOVERNMENT DID NOT BREACH THE PLEA AGREEMENT

Defendant contends that the plea agreement was unconstitutionally breached because the government did not continue sentencing "until after the trial of any associate involved." There were 14 other "associates" indicted with the defendant. Defendant appears to argue that had his sentencing date been extended until the disposition of all 14 other cases, his local charges would have been resolved, he would have already be serving his 10-year Guam sentence, so that the district court could have had the opportunity to run his sentence consecutively. The record is silent concerning the disposition of their cases with respect to his. This provision of the plea agreement was not breached by the government because it obviously concerns waiver of defendant's Speedy Trial rights in relation to the disposition of other federal prisoners. In addition, as Judge Benitez points out in his April 3, 2006, order at pages 5-6, however, former 18 U.S.C. § 3568 did not allow defendant's federal time to commence until he was "received by

4

1  federal authorities." Thus, it is irrelevant whether defendant was sentenced in District Court
2  before or after disposition of his local charges.

3  ## II - DEFENDANT WAIVED HIS RIGHT TO COLLATERALLY ATTACK
   ## HIS CONVICTION

4

5  Defendant is correct in his second claim, that the court violated Federal Rule of Criminal
   Procedure 11 by failing to advise him that the federal sentence would run consecutively to

6  whatever sentence he received for the Guam charges. United States v. Neely, 38 F.3d 458 (9th

7  Cir. 1994). This is not the end of the inquiry, however, only the beginning. Such an error must

8  cause prejudice. Defendant does not allege that if he had been properly advised, he would not

9  have pled guilty. United States v. Timmreck, 441 U.S. 780 (1979).

10  This violation of Rule 11 could have been raised at sentencing or on direct appeal, but

11  was not. McCarthy v. United States, 294 U.S. 459 (1969). Hence, defendant has procedurally

12  defaulted on his claim. The Supreme Court has strictly limited the circumstances under which an

13  individual can attack a guilty plea on collateral review. United States v. Bousley, 523 U.S. 614,

14  621 (1998). Defendant must demonstrate cause for failing to raise the issue on direct appeal,

15  Murray v. Carrier, 477 U.S. 478 , 485 (1986), and that he has suffered actual prejudice, that he is

16  "actually innocent." Id. at 496.

17  Defendant has not made any claim that he is actually innocent of his heroin conviction, or

18  of other criminal conduct charged in the initial indictment. The record reflects that the

19  government dismissed several charges against defendant in favor of an information charging one

20  count of distribution. "In cases where the Government has forgone more serious charges in the

21  course of plea bargaining, petitioner's showing of actual innocence must also extend to those

22  charges." Bousley, 523 U.S. 624.

23  //

24  //

25  //

26  //

27

28  5

1    For the reasons stated above, defendant's claim of ineffective assistance of counsel must

2 also be rejected.

3    Respectfully submitted this __24th__ day of August, 2006.

4                                          LEONARDO M. RAPADAS
                                          United States Attorney
5                                          Districts of Guam and NMI

6

7                          By:    _Karon V. Johnson_____
8                                 KARON V. JOHNSON
                                  Assistant U.S. Attorney
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                                          6

0079F

1  K. WILLIAM O'CONNOR
   United States Attorney
2  FREDERICK A. BLACK
   Assistant U.S. Attorney
3  Suite 502-A, PDN Building
   238 O'Hara Street
4  Agana, Guam  96910
   Telephone:  472-7332/7283
5
   Attorneys for United States of America
6
7
8                IN THE UNITED STATES DISTRICT COURT
9                   FOR THE TERRITORY OF GUAM
10
   UNITED STATES OF AMERICA,        )     CRIMINAL CASE NO. 89-00050
11                                   )
                 Plaintiff,          )
12                                   )     SUPERCEDING INDICTMENT
                 vs.                 )
13                                   )     Conspiracy to Distribute Heroin
   MELWART TMETUCHL,                 )     [21 U.S.C. § 846 and § 841(a)(1)]
14 FRANCISCO ASANUMA aka "FRANK"     )
     aka "KAZOO",                    )     Conspiracy to Import Heroin
15 LOURDES JUALO AFABLE,             )     [21 U.S.C. § 952(a), § 960 and
   ANTONIO AGUON aka "ANTON",        )         § 963]
16 ANTONIO ALFORQUE,                 )
   ELINO ATAD,                       )     Conspiracy to Distribute Marihuana
17 HOKKON BAULES,                    )     [21 U.S.C § 846 and § 841(a)(1)]
   PETER SAN NICOLAS BAZA            )
18   aka "SMACK",                    )     Conspiracy to Import Marihuana
   ROMEO BENIN,                      )     [21 U.S.C. § 952(a), § 960 and
19 ALFONSO BORJA aka "REHEBONG",     )         § 963]
   JOSEPH B. CAMACHO,                )
20 EVELYN CRUZ,                      )     Distribution and Possession
   JOHN CRUZ aka JUAN SALAS CRUZ     )     with Intent to Distribute Heroin
21   aka "KALASKAS",                 )     [21 U.S.C. § 841(a)(1) and
   OLSINGCH IYEKAR,                  )         18 U.S.C. § 2]
22 JULIO KAZUO,                      )
   EDDIE LUJAN,                      )     Importation of Heroin
23 LILY MABEL aka LILY "IYEKAR",     )     [21 U.S.C. § 952(a) and § 960]
   LONNIE MANACMUL,                  )
24 JOHN G. MANIBUSAN,                )     Unlawful Use of a Firearm
   JOSEPH AFLAGUE MANIBUSAN aka      )     [18 U.S.C. § 924(c)]
25   "PING ROY",                     )
   ROBERT MANIBUSAN aka "ALVIN"      )     Continuing Criminal Enterprise
26   MANIBUSAN aka "ALBING",         )     [21 U.S.C. § 848]
   ANTONIO MARIUR aka "ANTON BORJA", )

FILED
Office of the Clerk
DISTRICT COURT OF GUAM
AGANA, GUAM

JUL 1 2 1989

MARY L. MICHELS
Clerk of Court

FORM OBD-183
MAR. 83

EXHIBIT 1

ESTHER MARIUR aka ESTHER BORJA )
    aka "ESTHER PALAU" aka )
    BALERIA BORJA aka ESTER LUJAN, )
ALEX MESA, )
PEDRO MESA, )
SIDNEY MOBEL, )
JOHN NAHOLOWAA, )
ALEX NGIRAINGAS, )
ROSETTY M. NGIRAINGAS, )
SAMUEL NGIROS, )
AGGIE OKADA, )
DOROTHY OKADA aka DOT, )
CARSON OLKERIIL, )
DANNY PANGELINAN, )
JOSEPH PANGELINAN, )
MARTHA PANGELINAN, )
WILLIAM PANGELINAN )
    aka "BILLY JACK" aka "BILL" )
CLARENCE POLLI, )
ANGHENIO SABINO )
    aka ANZELIO SABINO, )
RICHARD SADANG )
    aka "RICHARD SILMAI", )
NOBUYA SUGIYAMA, )
JOHN TEVID, )
LESLIE TEWID, )
DANIEL TURNER, )
MARTIN VILORIA, and )
YONG YALLAP aka BEN HART, )
                               )
                Defendants. )
_____ )


THE GRAND JURY CHARGES:

### CONSPIRACY TO DISTRIBUTE HEROIN

### COUNT 1

    Violation of Title 21, United States Code, Section 846, to wit:
Beginning on or about January 1, 1984, the exact date being unknown to the
Grand Jury and continuously thereafter, up to and including the date of this
indictment,

- 2 -

MELWART TMETUCHL,
FRANCISCO ASANUMA aka "FRANK"
   aka "KAZUO",
LOURDES JUALO AFABLE,
ANTONIO AGUON aka "ANTON",
ANTONIO ALFORQUE,
ELINO ATAD,
HOKKON BAULES,
PETER SAN NICOLAS BAZA
   aka "SMACK",
ROMEO BENIN,
ALFONSO BORJA aka "REHEBONG",
JOSEPH B. CAMACHO,
EVELYN CRUZ,
JOHN CRUZ aka JUAN SALAS CRUZ
   aka "KALASKAS",
OLSINGCH IYEKAR,
JULIO KAZUO,
EDDIE LUJAN,
LONNIE MANACMUL,
JOHN G. MANIBUSAN,
JOSEPH AFLAGUE MANIBUSAN aka,
   "PING ROY",
ROBERT MANIBUSAN aka "ALVIN"
   MANIBUSAN aka "ALBING",
ANTONIO MARIUR aka "ANTON BORJA",
ESTHER MARIUR aka ESTHER BORJA
   aka "ESTHER PALAU" aka
   BALERIA BORJA aka ESTER LUJAN,

ALEX MESA
PEDRO MESA,
SIDNEY MOBEL,
JOHN NAHOLOWAA,
ALEX NGIRAINGAS,
ROSETTY M. NGIRAINGAS,
SAMUEL NGIROS,
AGGIE OKADA,
DOROTHY OKADA aka DOT,
CARSON OLKERIIL,
DANNY PANGELINAN,
JOSEPH PANGELINAN,
MARTHA PANGELINAN,
WILLIAM PANGELINAN
   aka "BILLY JACK" aka "BILL"
CLARENCE POLLI,
ANGHENIO SABINO
   aka ANZELIO SABINO,
RICHARD SADANG
   aka "RICHARD SILMAI",
NOBUYA SUGIYAMA,
JOHN TEVID,
LESLIE TEWID,
DANIEL TURNER,
MARTIN VILORIA, and
YONG YALLAP aka BEN HART,

the defendants herein, and other unindicted co-conspirators both known and unknown to the Grand Jury, did unlawfully, knowingly, willfully and intentionally combine, conspire, confederate and agree together in the District of Guam, Palau and elsewhere, to distribute heroin, a Schedule I narcotic controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

//

//

//

//

- 3 -

FORM OBD-183
MAR. 83

## Objects of the Conspiracy

The objects of said conspiracy were accomplished as follows:

1. The defendants would obtain heroin from unknown co-conspirators from Thailand, the Philippines and elsewhere in Asia and import it into Palau and into Guam.

2. After the heroin arrived in Palau and Guam the defendants and other unindicted co-conspirators would arrange for its distribution. The various distributors would share the heroin with each other, so that in the event that the heroin supply was low for one distributor, he or she would be able to obtain it from another drug associate.

3. In order to accomplish this objective and to conceal their illegal activities the defendants would at times use coded language to conceal the true content of their drug related conversations.

4. To assure the objects of the conspiracy and to encourage the prompt payment of heroin debts and to discourage any cooperation with law enforcement officials, the defendants would arrange to assault, intimidate or murder individuals thought to be cooperating with law enforcement officials and individuals who were failing to pay off their heroin debts.

5. In order to afford the heroin related expenses, robberies and burglaries were conducted, firearms were traded for heroin and marihuana profits were reinvested to purchase heroin. The protection of the heroin distribution system required the display of firearms and at times the use of firearms by trusted co-conspirators who acted in the capacity of guards for the distributors.

//

//

- 4 -

FORM OBD-183
MAR. 83

## Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the defendants and others performed the following overt acts, among others:

1. In each of the years between and including 1984 through 1989, the defendants arranged for the importation of heroin into Guam and Palau from Thailand, the Philippines and other parts of Asia.

2. In each of the years between and including 1984 through 1989, the defendants arranged for the distribution of heroin on Guam and in Palau.

3. In each of the years between and including 1984 through 1989, the defendants obtained funding for heroin from various burglaries, robberies and murders. The defendants traded firearms for marihuana and heroin; marihuana profits were used to maintain the supply of heroin.

4. At various times in 1987, MELWERT TMETUCHUL used Lourdes Afable to bring multiple ounces of heroin from Manila to Palau for subsequent transport to Guam.

5. At various times in 1987 and 1988, ANTONIO ALFORQUE distributed heroin on Guam. To serve the ends of the conspiracy, ANTONIO ALFORQUE carried a firearm from Guam to Palau on behalf of Sidney Mobel.

6. At various times during the conspiracy, FRANCISCO ASANUMA aka "KAZUO" aka "FRANK" possessed, with intent to distribute, pound quantities of heroin.

7. At various times between and including 1986 through 1988, FRANK ASANUMA agreed with others to import multiple pound quantities of heroin from Palau into Guam and to other parts of the United States.

//

//

- 5 -

FORM OBD-183
MAR. 83

8. In early 1986, FRANK ASANUMA arranged to send a sample of marihuana into the United States via Guam from Palau using the United States mails.

9. On or about in March 1987, FRANCISCO ASANUMA utilized the United States mail to import a sample bindle of heroin into the United States via Guam from Palau.

10. At various times during the conspiracy, FRANK ASANUMA and HOKKON BAULES possessed with intent to distribute multiple quantities of marihuana cigarettes aka "joints" and arranged for the transport of marihuana plants.

11. At various times during the conspiracy, FRANK ASANUMA used Yong Yallap to distribute heroin on Palau.

12. At various in 1986 and 1987, JOHN and EVELYN CRUZ and ELINO ATAD arranged to bring heroin into Guam from Palau.

13. In 1988, ELINO ATAD made plans to import heroin into Guam from the Philippines.

14. In early 1987, HOKKON BAULES arranged to bring multiple ounce quantities of heroin from the Philippines into Palau.

15. At various times during 1985 through 1988, PETER SAN NICOLAS BAZA aka "SMACK" distributed heroin on Guam.

16. At various times in 1987, ROMEO BENIN assisted in the distribution of heroin on Guam.

17. At various times in 1987, ALFONSO BORJA aka "REHEBONG" distributed heroin and marihuana on Guam. ALFONSO BORJA also assisted the co-conspirators to locate firearms to be sent to Palau in exchange for heroin.

18. At various times in 1987, JOSEPH CAMACHO assisted in the distribution of heroin on Guam.

- 6 -

FORM OBD-183
MAR. 83

19. On or about in January 1983, OLSINGCH IYEKAR distributed marihuana on Guam.

20. On or about in June 1984, OLSINGCH IYEKAR made plans to import heroin into Guam from Palau.

21. At various times between and including June and August 1984, OLSINGCH IYEKAR and RICHARD SADANG aka "RICHARD SILMAI" traveled to Bangkok, Thailand and arranged for the importation of heroin into Palau. At various times in late 1984 and 1985, OLSINGCH IYEKAR and RICHARD SADANG distributed heroin on Palau.

22. On or about in November 1984, OLSINGCH IYEKAR arranged for the importation of marihuana from Palau into Guam.

23. In about the year 1985, OLSINGCH IYEKAR and RICHARD SADANG aka "RICHARD SILMAI" distributed heroin on Palau.

24. On or about the year 1987, OLSINGCH IYEKAR arranged for the importation of multiple ounce quantities of heroin and multiple pound quantities of marihuana from Palau into Guam.

25. At various times in 1987, JULIO KAZUO distributed ounce quantities of heroin on Guam and arranged for the importation of pound quantities of marihuana.

26. At various times in 1987 on Guam, EDDIE LUJAN assisted in the distribution of heroin that Esther "Borja" Mariur received from her brother Anton "Borja" Mariur.

27. On or about in December 1987, LILY MABEL aided and abetted Olsingch Iyekar in the importation of multiple pound quantities of marihuana from Palau into Guam.

//

- 7 -

28. At various times in 1987, LONNIE MANACMUL distributed heroin on Guam.

29. At various times during the conspiracy, ANTON "BORJA" MARIUR purchased heroin from Melwart Tmetuchl in multiple ounce quantities and imported this heroin from Palau into Guam for distribution on Guam through various members of the conspiracy. One unindicted co-conspirator, Joseph Manibusan aka "Cabajo", assisted in the distribution of this heroin.

30. Pursuant to the conspiracy, Parnel Lujan was murdered on October 8, 1986 and Antonio Chargualaf was murdered on January 17, 1987, by co-conspirators Joseph Manibusan, Daniel Turner, Martin Viloria, Robert Manibusan and others because the co-conspirators believed the victims were government informants.

31. On November 8, 1986, pursuant to the conspiracy, in order to obtain money to purchase heroin, and for related reasons, Carlo Bossi and Maria Tanaka were robbed and murdered by Daniel Turner, Martin Viloria, John Manibusan and Dino Olandez. Co-conspirators John Naholowaa and Robert Manibusan assisted in the destruction of the evidence and in providing an escape route.

32. At various times throughout the conspiracy, John Naholowaa, Daniel Turner and Martin Viloria acted as guards and carried firearms to protect the distribution of heroin.

33. At various times throughout the conspiracy, ANTONIO AGUON aka "ANTON" assisted in the distribution of heroin and marihuana on Guam.

34. At various times in 1987 and 1988, JOSEPH AFLAGUE MANIBUSAN aka "PING ROY" assisted Sidney Mobel, Alfonso Borja, Anton Borja Mariur and other co-conspirators in the distribution of heroin on Guam.

- 8 -

35.  At various times throughout the conspiracy, JOHN and

ROBERT MANIBUSAN, together with Martin Viloria, Daniel Turner, John Naholowaa

and Antonio Aguon and other co-conspirators assisted in the distribution of

heroin on Guam.

36. At various times in and including 1986 through 1988, ESTHER BORJA

MARIUR aka "ESTHER PALAU" aka ESTER LUJAN aka BALERIA BORJA assisted her

brother Anton Borja Mariur in bringing heroin into Guam from Palau and in its

subsequent distribution on Guam.

37.  At various times in 1986 and 1987, ALEX MESA distributed heroin he

received from William Pangelinan aka "Bill" aka "Billy Jack" as well as from

Bill's brother, Danny Pangelinan.

38.  At various times in 1987, PEDRO MESA distributed heroin he

received from Alex Ngiraingas.

39.  At various times throughout the conspiracy, SIDNEY MOBEL arranged

for the importation of heroin from Palau into Guam for subsequent distribution

on Guam.  SIDNEY MOBEL used many of the co-conspirators such as John Tevid,

Bill and Danny Pangelinan, Antonio Aguon, Antonio Alforque, "Ping Roy"

Manibusan and Joseph Manibusan aka "Cabajo" and others to assist in these

transactions.

40.  At various times throughout the conspiracy ALEX NGIRAINGAS sold

marihuana and heroin on Guam.  Rosetty M. Ngiraingas, the wife of

ALEX NGIRAINGAS, assisted in the distribution of heroin on Guam.

41.  At various times in 1985 on Palau, SAMUEL NGIROS assisted

FRANK ASANUMA in the acquisition of heroin.

42.  At various times in 1986 and 1987, AGGIE OKADA and DOROTHY OKADA

aka "DOT" assisted Anton Borja Mariur in the distribution of heroin on Guam.

- 9 -

1    43.  At various times throughout the conspiracy CARSON OLKERIIL
2    distributed marihuana and heroin on Guam.
3    44.  At various times during the conspiracy DANNY, WILLIAM, JOSEPH and
4    MARTHA PANGELINAN distributed heroin on Guam.
5    45.  At various times in 1986 and 1987, CLARENCE POLLI imported heroin
6    from Palau to Guam and distributed heroin on Guam.
7    46.  At various times in 1988, ANGHENIO SABINO aka ANZELIO SABINO
8    assisted Melwart Tmetuchl in heroin distributions on Palau and in the planned
9    shipment of heroin.
10   47.  At various times throughout the conspiracy, JOHN TEVID assisted in
11   the importation into Guam and subsequent distribution of heroin and marihuana.
12   48.  At various times throughout the conspiracy, LESLIE TEWID assisted
13   Melwart Tmetuchl in the distribution of heroin.
14   49.  At various times throughout the conspiracy, MELWART TMETUCHL
15   possessed kilo quantities of heroin which he distributed on Palau and which he
16   exported into Guam with Anton Borja Mariur, Sidney Mobel and other
17   co-conspirators he supervised in a series of heroin transactions.

18
19
20                    CONSPIRACY TO IMPORT HEROIN
21                              COUNT 2
22
23        Violation of Title 21, United States Code, Section 963, to wit:  From
24   on or about January 1, 1984, the exact date being unknown to the Grand Jury
25   and continuously thereafter, up to and including the date of this indictment,
26   //

- 10 -

MELWART TMETUCHL,
FRANCISCO ASANUMA aka "FRANK"
   aka "KAZUO",
LOURDES JUALO AFABLE,
HOKKON BAULES,
PETER SAN NICOLAS BAZA
   aka "SMACK",
ALFONSO BORJA aka "REHEBONG",
JOSEPH B. CAMACHO,
EVELYN CRUZ,
JOHN CRUZ aka JUAN SALAS CRUZ
   aka "KALASKAS",
OLSINGCH IYEKAR,
JULIO KAZUO,
JOSEPH AFLAGUE MANIBUSAN aka
   "PING ROY",
ANTONIO MARIUR aka "ANTON BORJA",

ESTHER MARIUR aka ESTHER BORJA
   aka "ESTHER PALAU" aka
   BALERIA BORJA aka ESTER LUJAN,
SIDNEY MOBEL,
ALEX NGIRAINGAS,
SAMUEL NGIROS,
DOROTHY OKADA aka DOT,
CARSON OLKERIIL,
CLARENCE POLLI,
ANGHENIO SABINO
   aka ANZELIO SABINO,
RICHARD SADANG
   aka "RICHARD SILMAI",
NOBUYA SUGIYAMA,
JOHN TEVID,
LESLIE TEWID, and
YONG YALLAP aka BEN HART,

defendants herein, and unindicted co-conspirators both known and unknown to

the Grand Jury, did unlawfully, knowingly, willfully and intentionally

combine, conspire, confederate and agree together in the District of Guam and

elsewhere, to import heroin, a Schedule I narcotic controlled substance, into

the United States from a place outside thereof, in violation of Title 21,

United States Code, Sections 952(a), 960 and 963.


#### Objects of the Conspiracy and Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the

defendants and others performed, among others, all of the overt acts set forth

in Count I of this Indictment, which objects and overt acts are hereby

realleged and incorporated herein by reference.

//

//

//

//


- 11 -

CONSPIRACY TO DISTRIBUTE MARIHUANA

## COUNT 3

Violation of Title 21, United States Code, Section 846, to wit: Beginning on or about January 1, 1984, the exact date being unknown to the Grand Jury and continuously thereafter, up to and including the date of this indictment,

| | |
|---|---|
| MELWART TMETUCHL | JULIO KAZUO, |
| FRANCISCO ASANUMA aka "FRANK" aka "KAZUO", | LILY MABEL aka LILY IYEKAR", SIDNEY MOBEL, |
| ANTONIO AGUON aka "ANTON", | ALEX NGIRAINGAS, |
| ELINO ATAD, | CARSON OLKERIIL, |
| HOKKON BAULES, | NOBUYA SUGIYAMA, and |
| ALFONSO BORJA aka "REHEBONG", | JOHN TEVID, |
| OLSINGCH IYEKAR, | |

the defendants herein, and other unindicted co-conspirators both known and unknown to the Grand Jury, did unlawfully, knowingly, willfully and intentionally combine, conspire, confederate and agree together in the District of Guam, Palau and elsewhere, to distribute marihuana, a Schedule I narcotic controlled substance, all in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

## Objects of the Conspiracy and Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the defendants and others performed, among others, all of the overt acts set forth in Count I of this Indictment, which objects and overt acts are hereby realleged and incorporated herein by reference.

- 12 -

FORM OBD-183
MAR. 83

CONSPIRACY TO IMPORT MARIHUANA

## COUNT 4

Violation of Title 21, United States Code, Section 963, to wit: From
on or about January 1, 1984, the exact date being unknown to the Grand Jury
and continuously thereafter, up to and including the date of the Indictment,

MELWART TMETUCHL
FRANCISCO ASANUMA aka "FRANK"
   aka "KAZUO",
ALFONSO BORJA aka "REHEBONG",
OLSINGCH IYEKAR,
JULIO KAZUO,

LILY MABEL aka LILY IYEKAR",
SIDNEY MOBEL,
ALEX NGIRAINGAS,
CARSON OLKERIIL,
NOBUYA SUGIYAMA, and
JOHN TEVID,

defendants herein, and unindicted co-conspirators both known and unknown to
the Grand Jury, did unlawfully, knowingly, willfully and intentionally
combine, conspire, confederate and agree together in the District of Guam and
elsewhere, to import marihuana, a Schedule I narcotic controlled substance,
into the United States from a place outside thereof, in violation of Title 21,
United States Code, Sections 952(a), 960 and 963.

## Objects of the Conspiracy and Overt Acts

In furtherance of the conspiracy and to effect the objects thereof, the
defendants and others performed, among others, all of the overt acts set forth
in Count I of this Indictment, which objects and overt acts are hereby
realleged and incorporated herein by reference.

//

//

- 13 -

# CONTINUING CRIMINAL ENTERPRISE

## COUNT 5

Violation of Title 21, United States Code, Section 848(a), to wit: Beginning on or about January 1 of 1985, the exact date being unknown to the Grand Jury and continuing until the time of this Indictment in the District of Guam, Palau and elsewhere, the defendant MELWART TMETUCHL, unlawfully, knowingly, willfully and intentionally violated Title 21, United States Code, Sections 952, 960 and 841 by doing and causing the importation of heroin into the United States from a place outside thereof, and by doing and causing the distribution of heroin as alleged, in part, in Counts 1 through 2 of the Indictment, which counts are incorporated herein by reference, which violations were part of a continuing series of violations of the above narcotic offenses undertaken by MELWART TMETUCHL, in concert with at least five other persons with respect to whom defendant MELWART TMETUCHL, occupied a position of organizer, a supervisor and manager, and from which defendant MELWART TMETUCHL obtained substantial income and resources.

## Forfeiture

Upon conviction of defendant MELWART TMETUCHL as set forth in the foregoing (Count 5), the United States is entitled to forfeiture of, and the defendant shall forfeit to the United States, pursuant to Title 21, United States Code, Sections 848 and 853, all profits and proceeds of profits obtained by him in such enterprise, his interest in, claim against, and any and all property and contractual rights of any kind affording a source of

//

- 14 -

1 | influence over such enterprise and any property used, or intended to be used,
2 | in any manner or part, to commit or to facilitate the commission of such
3 | violation.

SUBSTANTIVE DISTRIBUTION AND POSSESSION
WITH INTENT TO DISTRIBUTE COUNTS 6-19

COUNT 6

9 | On or about July 17, 1987, in the District of Guam, JOSEPH B. CAMACHO,
10 | the defendant herein, did unlawfully, knowingly, willfully and intentionally
11 | distribute one cap of heroin, a Schedule I narcotic controlled substance, in
12 | violation of Title 21, United States Code, Section 841(a)(1) and Title 18,
13 | United States Code, Section 2.

COUNT 7

17 | On or about October 15, 1987, in the District of Guam, JOSEPH B.
18 | CAMACHO, the defendant herein, did unlawfully, knowingly, willfully and
19 | intentionally distribute three bindles of heroin, a Schedule I
20 | narcotic controlled substance, in violation of Title 21, United States Code,
21 | Section 841(a)(1) and Title 18, United States Code, Section 2.

COUNT 8

25 | On or about October 16, 1987, in the District of Guam, JOSEPH B.
26 | CAMACHO, the defendant herein, did unlawfully, knowingly, willfully and

- 15 -

intentionally distribute one cap of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 9

On or about October 20, 1987, in the District of Guam, JOSEPH B. CAMACHO, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute one cap of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 10

On or about November 11, 1987, in the District of Guam, JOSEPH B. CAMACHO, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute 11 bindles of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 11

On or about July 5, 1987, in the District of Guam, JUAN SALAS CRUZ aka "JOHN" aka "KALASKAS", the defendant herein, did unlawfully, knowingly, willfully and intentionally possess with intent to distribute 17 bindles of heroin, a Schedule I narcotic controlled substance, in violation of Title 21,

- 16 -

United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 12

On or about March 15, 1988, in the District of Guam, JOSEPH AFLAGUE MANIBUSAN aka "PING ROY", the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute 3 bindles of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 13

On or about May 18, 1987, in the District of Guam, EDDIE LUJAN, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute 3 bindles of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 14

On or about May 28, 1987, in the District of Guam, EDDIE LUJAN, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute 5 bindles of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

- 17 -

## COUNT 15

On or about May 29, 1987, in the District of Guam, EDDIE LUJAN, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute 5 bindles of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 16

On or about December 9, 1987, in the District of Guam, ROSETTY M. NGIRAINGAS, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute two caps of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 17

On or about December 9, 1987, in the District of Guam, ROSETTY M. NGIRAINGAS and ALEX NGIRAINGAS, the defendants herein, did unlawfully, knowingly, willfully and intentionally possess with intent to distribute 8 caps of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

//
//

- 18 -

## COUNT 18

On or about May 12, 1987, in the District of Guam, JOHN TEVID, the defendant herein, did unlawfully, knowingly, willfully and intentionally distribute two ounces of marihuana, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

## COUNT 19

On or about August 21, 1987, in the District of Guam, NORBUYA SUGIYAMA, the defendant herein, did unlawfully, knowingly, willfully and intentionally possess with intent to distribute approximately six caps of heroin, a Schedule I narcotic controlled substance, in violation of Title 21, United States Code, Section 841(a)(1) and Title 18, United States Code, Section 2.

### SUBSTANTIVE IMPORTATION COUNTS 20-24

## COUNT 20

On or about March 10, 1987, in the District of Guam, and elsewhere, FRANCISCO ASANUMA, the defendant herein, did unlawfully, knowingly, willfully and intentionally cause to be imported into the United States, from a place outside thereof, one bindle of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952, 960, 963 and Title 18, United States Code, Section 2.

//

- 19 -

COUNT 21

On or about April 29, 1987, in the District of Guam, and elsewhere, MELWART TMETUCHL, the defendant herein, did unlawfully, knowingly, willfully and intentionally cause to be imported into the United States, from a place outside thereof, five ounces of heroin, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952, 960, 963 and Title 18, United States Code, Section 2.

COUNT 22

On or about November 23, 1984, in the District of Guam, and elsewhere, OLSINGCH IYEKAR, the defendant herein, did unlawfully, knowingly, willfully and intentionally cause to be imported into the United States, from a place outside thereof, multiple kilo quantities of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952, 960, 963 and Title 18, United States Code, Section 2.

COUNT 23

On or about December 13, 1987, in the District of Guam, and elsewhere, OLSINGCH IYEKAR and LILY MABEL aka LILY "IYEKAR", the defendants herein, did unlawfully, knowingly, willfully and intentionally cause to be imported into the United States, from a place outside thereof, 33 kilos of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952, 960, 963 and Title 18, United States Code, Section 2.

- 20 -

## COUNT 24

On or about August 2, 1986, in the District of Guam, and elsewhere, JOHN TEVID, the defendant herein, did unlawfully, knowingly, willfully and intentionally cause to be imported into the United States, from a place outside thereof, 15 kilos of marihuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 952, 960, 963 and Title 18, United States Code, Section 2.

## FIREARMS COUNTS 25-29

## COUNT 25

On or about July 5, 1987, and during the course of the conspiracy to distribute heroin set forth in Court 1 of the Indictment, which is incorporated herein by reference, in the District of Guam, JUAN SALAS CRUZ aka "JOHN" aka "KALASKAS", did carry a firearm to commit the offense of conspiracy to distribute heroin, a felony prosecutable in a court of the United States, in violation of Title 18, United States Code, Section 924(c).

## COUNT 26

On or about January 17, 1987, and during the course of the conspiracy to distribute heroin set forth in Court 1 of the Indictment, which is incorporated herein by reference, in the District of Guam, DANIEL TURNER, did carry a firearm to commit the offense of conspiracy to distribute heroin, a
//

- 21 -

felony prosecutable in a court of the United States, in violation of Title 18,
United States Code, Section 924(c).

## COUNT 27

At various times between December of 1986 and the year 1989, and during
the course of the conspiracy to distribute heroin set forth in Court 1 of the
Indictment, which is incorporated herein by reference, in the District of
Guam, JOHN NAHOLOWAA, did carry a firearm to commit the offense of conspiracy
to distribute heroin, a felony prosecutable in a court of the United States,
in violation of Title 18, United States Code, Section 924(c).

## COUNT 28

At various times between December of 1986 and the year 1989, and during
the course of the conspiracy to distribute heroin set forth in Court 1 of the
Indictment, which is incorporated herein by reference, in the District of
Guam, MARTIN VILORIA, did carry a firearm to commit the offense of conspiracy
to distribute heroin, a felony prosecutable in a court of the United States,
in violation of Title 18, United States Code, Section 924(c).

## COUNT 29

At various times between and including December of 1986 and 1989, and
during the course of the conspiracy to distribute heroin set forth in Count 1
//

- 22 -

FORM OBD-183
MAR. 83

1 | of the Indictment, which is incorporated herein by reference, in the District

2 | of Guam, JOHN G. MANIBUSAN, did carry a firearm to commit the offense of

3 | conspiracy to distribute heroin, a felony prosecutable in a court of the

4 | United States, in violation of Title 18, United States Code, Section 924(c).

6 | DATED this _12th_ day of July, 1989.

8 | A TRUE BILL:

10 | _Lisa A. Baza-Cruz_
11 | FOREPERSON

12 | K. WILLIAM O'CONNOR
| United States Attorney
13 | District of Guam

14 | By: _Frederick A. Black_
15 | FREDERICK A. BLACK
| Assistant U.S. Attorney

- 23 -

FORM OBD-183
MAR. 83

DISTRICTS OF GUAM & NMI

NOV 23 2005

RECEIVED

IN THE DISTRICT COURT OF GUAM

TERRITORY OF GUAM

\* \* \*

UNITED STATES OF AMERICA,      )    COURT OF APPEALS
                               )    **CASE NO.**
                Plaintiff,     )
                               )
        vs.                    )
                               )    CASE NO. CR89-00104
JOHN G. MANIBUSAN,             )
                               )
                Defendant.     )
_____)

TRANSCRIPT OF PROCEEDINGS

BEFORE

THE HONORABLE CRISTOBAL C. DUENAS

Senior District Judge

**WAIVER OF INDICTMENT, FILING OF INFORMATION & PLEA**

**WEDNESDAY, SEPTEMBER 13, 1989**

Wanda M. Miles
Official Court Reporter
District Court of Guam

EXHIBIT 2

1    **APPEARANCES:**

2

3    FOR THE PLAINTIFF:

4    UNITED STATES ATTORNEY
     BY:   FREDERICK A. BLACK, Esq.
5    Assistant United States Attorney
     Fifth Floor, PDN Building
6    238 Archbishop Flores Street
     Agana, Guam  96910
7

8

9    FOR THE DEFENDANT:

10   MICHAEL F. PHILLIPS, ESQ.
     Attorney at Law
11   Suite 215, Union Bank Building
     Agana, Guam  96910
12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1   AGANA, GUAM; WEDNESDAY, SEPTEMBER 13, 1989; 10:01 A.M.

 2                          *  *  *

 3            THE COURT:  Order of business.

 4            THE CLERK:  If Your Honor please, this is

 5   Criminal Case 89-00104, United States of America versus

 6   John G. Manibusan, coming up for waiver of indictment,

 7   filing of information, and entry of plea.

 8            THE COURT:  Are you John G. Manibusan?

 9            THE DEFENDANT:  Yes, Your Honor.

10            THE COURT:  Mr. Manibusan, you are being

11   represented by Mr. Phillips; is that correct?

12            THE DEFENDANT:  Yes.  Yes, Your Honor.

13            THE COURT:  Before we proceed, the clerk will

14   administer the oath to the defendant.

15                     JOHN G. MANIBUSAN,

16   the defendant herein, was first duly sworn and

17   testified as follows:

18                       EXAMINATION

19   BY THE COURT:

20      Q.   Mr. Manibusan, you have taken the oath.  That

21   means that you are now required to answer all of the

22   court's questions truthfully; in other words, you have

23   to tell the truth.  If you give a false answer, you may

24   ge subjecting yourself to the penalty of perjury, which

25   is a felony.  Do you understand that?
```

1     A.    Yes, Your Honor.

2     Q.    If you do not understand the court's question,

3 let the court know about it and the court can try to

4 simplify the question.  You understand that?

5     A.    I understand, Your Honor.

6     Q.    Also feel free to consult with your counsel at

7 any time of the proceeding if you deem it necessary.

8 Do you understand that?

9     A.    Yes.

10     Q.    How old are you, Mr. Manibusan?

11     A.    I'm 30 years old.

12     Q.    30 years old.  And as to the extent of your

13 education?

14     A.    I finish school in Hawaii Job Corps.

15     Q.    In Hawaii?

16     A.    Yes, Your Honor.

17     Q.    Did you have the equivalent of a high school

18 education?

19     A.    Yes, Your Honor, 12th grade.

20     Q.    12th grade.  Are you currently under the care

21 of a physician or a psychiatrist?

22     A.    No, Your Honor.

23     Q.    Have you ever been hospitalized or treated for

24 narcotic addiction?

25     A.    No, Your Honor.

1   Q.   Are you presently on medication?

2   A.   No, Your Honor.

3   Q.   Have you been furnished with a copy of the

4   information containing the charge against you?

5   A.   Yes, Your Honor.

6   Q.   Very well.  The charge in the information has

7   to do with a violation of Section 841(a)(1) of Title 21

8   of the United States Code, that is, possession with

9   intent to distribute heroin.  And the information

10   charges that on or about early part of 1987, here in

11   Guam, you the defendant did unlawfully, knowingly,

12   willfully and intentionally possessed with intent to

13   distribute less than 100 grams of heroin, which is a

14   Schedule I Narcotic Controlled Substance, and as stated

15   earlier, this is a violation of Title 21 of the United

16   States Code, Section 841(a)(1).  Do you understand

17   that?

18   A.   Yes, Your Honor.

19   Q.   This is a felony and as such, you cannot be

20   proceeded against unless there is an indictment filed

21   against you.  However, under paragraph 1 of the plea

22   agreement, the original of which has been submitted to

23   the court, paragraph 1 provides that you agree waive

24   indictment by a grand jury and to enter a plea of

25   guilty to the charge contained in the information.  And

1  this plea agreement was signed by you yesterday?

2     A.   Yes, Your Honor.

3     Q.   Also signed by your counsel yesterday and

4  counsel for the United States.

5     Since you have agreed to waive indictment by

6  the grand jury, we will now go ahead with the waiver of

7  indictment proceeding.  And at this time the court will

8  inform you as follows:

9     You have the constitutional right to be

10  charged by an indictment of a grand jury.  However, you

11  can waive that indictment and consent to being charged

12  by information of the United States Attorney.

13     What you have in front of you is an

14  information.  In other words, instead of an indictment,

15  this felony charge against you is now being brought by

16  the United States Attorney by the filing of this

17  information.  However, unless you waive indictment, you

18  may not be charged with a felony unless a grand jury

19  finds by return of an indictment that there is probable

20  cause to believe that a crime has been committed and

21  that you did commit said crime.  If you do not waive

22  indictment, the government may present the case to the

23  grand jury and request the grand jury to indict you.

24     Now, this is what a grand jury is.  It is

25  composed of at least 16, that's the minimum, and not

1   more than 23 persons, that's the maximum; and that at

2   least 12 grand jurors must find that there's probable

3   cause to believe you did commit the crime with which

4   you are charged before you may be indicted.  Now, the

5   grand jury, if this matter is presented to the grand

6   jury, might or might not indict you.  However, if you

7   waive indictment by the grand jury, this case will

8   proceed against you on the U.S. Attorney's information

9   just as though you had been indicted.

10      A.    (Nodding.)

11      Q.    Now, have you discussed this matter of waiving

12  your right to indictment by a grand jury with your

13  attorney, Mr. Phillips?

14      A.    Yes, Your Honor, I have.

15      Q.    Do you now understand your right to indictment

16  by a grand jury?

17      A.    Yes, Your Honor.

18      Q.    Were any threats or promises made to induce

19  you to waive indictment?

20      A.    Ah --

21            (Pause to confer with defense counsel.)

22      A.    Oh, no.  No, Your Honor.

23      Q.    Very well.  Do you wish to waive your right to

24  indictment by a grand jury?  Do you wish to give up

25  your right to indictment by a grand jury?

1    A.    Yes, Your Honor.

2            THE COURT:  Mr. Phillips, do you know of any

3    reason why the defendant should not waive indictment?

4            MR. PHILLIPS:  No, Your Honor.

5            THE COURT:  You may sign the waiver.

6                (Whereupon the waiver was executed and

7                presented to the court.)

8            THE COURT:  An order will be entered in the

9    record to the effect that it is a finding of the court

10   that the waiver of indictment is knowingly and

11   voluntarily made by the defendant, and that such waiver

12   of indictment is accepted by the court.

13           We will proceed with the arraignment of this

14   defendant.

15       Q.    Mr. Manibusan, you have a copy of the

16   information before you?

17       A.    Yes, Your Honor, I do.

18       Q.    You have indicated to the court that you

19   understand what the charge is against you --

20       A.    Yes, Your Honor.

21       Q.    -- in the course of the waiver of indictment

22   proceeding.

23       A.    Yes, Your Honor.

24       Q.    Are you ready to enter a plea at this time as

25   to whether you are guilty or not guilty of the charge

1   contained in the information which has to do with

2   possession with intent to distribute heroin, in

3   violation of Section 21 of the United States Code,

4   Title 21?

5        A.   Yes, Your Honor.

6        Q.   Section 841.  And how do you plead to the

7   charge, guilty or not guilty?

8        A.   Guilty, Your Honor.

9        Q.   Before the court will accept your plea of

10  guilty, you have to answer certain questions propounded

11  by the court, and this is for the purpose of

12  ascertaining, first, that your plea of guilty is a

13  voluntary plea; second, that on the basis of facts

14  which you may so narrate to the court, or which facts

15  may be stated to the court by the prosecution, all of

16  the essential elements of the offense have been met.

17       And once again, you are informed by the court

18  that you are required to answer all of the court's

19  questions truthfully.

20       A.   Yes, Your Honor, I understand.

21       Q.   Have you fully discussed this charge and the

22  case with Mr. Phillips as your counsel?

23       A.   Yes, Your Honor.

24       Q.   Are you fully satisfied with the counsel,

25  representation and advice given to you by Mr. Phillips

1    as your attorney?

2        A.    Yes, Your Honor, I am.

3        Q.    There is a plea agreement, as stated by the

4    court earlier.  We had already gone through paragraph 1

5    of the plea agreement; however, on paragraph 2 --

6            You have a copy of the plea agreement?

7        MR. PHILLIPS:  Yes, Your Honor.

8        THE COURT:  You agreed to cooperate fully and

9    truthfully with the federal investigators relative to

10   any illegal narcotic activities that you may be aware

11   of, and that if necessary, you will testify if

12   requested to do so.  Also, that the extent of your

13   cooperation will be made known to the court by the

14   United States prior to your sentencing.

15           You also stated that it is your further

16   understanding that you will remain liable and subject

17   to prosecution for any criminal drug scheme that you

18   may be aware of and that you do not fully advise the

19   United States of, or for any material omission in that

20   regard.  On its part the United States Attorney's

21   Office in Guam will not charge you with any additional

22   federal non-violent narcotic violation that you may

23   reveal to the federal investigators.  Also, that this

24   plea will have no impact on the local murder trial that

25   is pending against you in the Superior Court for which

1    you have elected to go to trial.

2            Also it's stated that it is your understanding

3    that the maximum sentence for this offense is a term of

4    imprisonment of 20 years, together with a -- together

5    with a fine of one million dollars, and any restitution

6    which may be ordered by the court. And if imprisonment

7    is ordered by the court, there will be a period of,

8    minimum term of three-year term of supervised release.

9            Now with regard to sentencing, the government

10   is free to recommend any sentence it deems appropriate,

11   and you are also free to argue for any sentence that

12   you may deem appropriate.

13       A.    (Nodding.)

14       Q.    As to the matter of fine, that is left up to

15   the discretion of the court.

16           And the government on its part, if your

17   cooperation is full and truthful, will recommend a

18   prison sentence of not more than ten years; and the

19   government will be the sole judge of whether or not

20   your cooperation is full and truthful, and may require

21   you to take a polygraph examination in that regard.

22           If the government makes no recommendation on

23   the ten-year maximum, then you may be faced with a

24   sentence of not more than 20 years, which is a

25   statutory maximum. And once again, you and the

1   government are free to argue before the court relative

2   to sentencing. And if your plea of guilty in this case

3   is accepted and you are sentenced on the basis of the

4   charge contained in this information, then all counts

5   in Criminal Case 89-50 against you will be dismissed.

6   You understand that?

7        A.   Yes, Your Honor.

8        Q.   Also paragraph 4, it is your understanding

9   that this plea agreement depends on your full and

10  truthful cooperation, and that should there be any

11  material omission or intentional misstatement, that the

12  government may then move to set aside this plea

13  agreement, to have it declared null and void.

14       And paragraph 5 has to do with the

15  continuation of the sentencing until after the

16  indictment and trial of any associates involved. And

17  that should there be a continuation of the scheduling

18  of sentencing, that you are waiving whatever rights you

19  may have under the Speedy Sentencing provision of the

20  Speedy Trial Act. Do you understand that?

21       A.   Yes, Your Honor.

22       Q.   Paragraph 6 has to do with your other

23  constitutional rights, and that will be read by the

24  court later on.

25       Now, you have stated that you have understood

1   all of the paragraphs which we had gone through on the

2   plea agreement and then you signed it, this plea

3   agreement, yesterday.  Before you signed it, you have

4   read it and discussed it with your attorney?

5       A.    Yes, Your Honor.

6       Q.    And your attorney explained it to you?

7       A.    Yes, Your Honor.

8       Q.    And then you signed it?

9       A.    Yes, Your Honor.

10      Q.    And you signed it voluntarily?

11      A.    Yes, Your Honor, I did.

12          THE COURT:  Very well.  The record will show

13  that the plea agreement executed by the parties will be

14  accepted by the court, and any relevant portions of

15  that plea agreement will be incorporated in a judgment

16  to be handed down by the court at a later date.

17      Q.    Now, aside from the plea agreement, has anyone

18  made any promises or assurances to you of any kind in

19  an effort to induce you to enter a plea of guilty in

20  this case?

21      A.    Uh, No, Your Honor.

22      Q.    Has anyone attempted in any way to force you

23  to plead guilty in this case?

24      A.    No, Your Honor.

25      Q.    Mr. Manibusan, the charge against you in this

1  case is a felony.  Do you understand that if your plea

2  of guilty is accepted by the court, you will be

3  adjudged guilty of that offense charged against you,

4  and that adjudication may deprive you of certain

5  valuable civil rights, such as the right to vote, the

6  right to hold public office, the right to serve on a

7  jury, and the right to possess any kind of firearm; do

8  you understand?

9      A.    Yes, I understand, Your Honor.

10     Q.    These and the others mentioned by the court

11  relative to the statutory penalties are some of the

12  consequences of your plea of guilty if accepted by the

13  court.

14           Now also under the law, there's the statutory

15  special assessment of $50 per felony count.  However,

16  under the existing current status of this matter in the

17  Ninth Circuit Court of Appeals which has declared it to

18  be unconstitutional, its finality has not yet been

19  determined because there's a possibility it may go all

20  the way up to the Supreme Court.  However, if it's

21  determined to be final, then at that time the court

22  will impose the assessment fee of $50.  If it's

23  declared to be unconstitutional in its final form, then

24  the court wil not include the assessment fee in the

25  judgment.  Do you understand that?

1     A.    Yes, Your Honor.

2     Q.    In other words, this assessment fee is being

3 deferred until a later date.

4     The record will show that the commission of

5 this offense is before the effective date of the

6 Sentencing Guidelines, hence, the provision of the

7 Sentencing Guidelines as promulgated by the United

8 States Sentencing Commission will not apply to this

9 case.

10     The other rights which have been contained in

11 the plea agreement which has not yet been addressed are

12 as follows:

13     First, you have entered a plea of guilty to

14 this charge.  The court will now advise you that you

15 have a right to enter a plea of not guilty.  And if you

16 had entered a plea of not guilty and persisted thereto,

17 you would then have the right to a trial by jury,

18 during which you would also have the right to the

19 assistance of counsel for your defense; the right to

20 see and hear all the witnesses and have them cross-

21 examined in your defense by your counsel here in open

22 court; the right on your own part to decline to

23 testify, that is, you have the right to refuse to

24 testify unless you voluntarily elected to do so in

25 your own defense; you also have the right to the

1  issuance of subpoenas or compulsory process, in other

2  words, to have witnesses subpoenaed to come to court

3  to testify in your defense, if you have any.

4          Those are some of your rights if you had

5  entered a plea of not guilty.  However, you have

6  entered a plea of guilty, and if that plea of guilty is

7  accepted by the court, then you are waiving your right

8  to a jury trial and all of the other rights associated

9  with a jury trial as I have just described them to you.

10 You understand that?

11     A.    Yes, I understand, Your Honor.

12     Q.    Also, by your plea of guilty, the court will

13 have to ask you certain questions, and some of your

14 answers may be incriminating.  However, you have waived

15 your right to self-incrimination by your plea of

16 guilty; do you understand that?

17     A.    Yes, I understand, Your Honor.

18     Q.    Now the essential elements of the offense

19 to which you have entered a plea of guilty, which

20 is possession with intent to distribute heroin, in

21 violation of Section 841(a)(1) of Title 21, United

22 States Code, are as follows:

23          That you, the defendant, did knowingly and

24 willfully possess heroin as charged in the information;

25 and second, that you did possess the substance with

1   intent to distribute the said substance.

2          Now the phrase "to possess with intent to

3   distribute" simply means to possess with intent to

4   deliver or transfer possession of a controlled

5   substance to another person with or without any

6   financial interest in the transaction.  Those are

7   the essential elements of the offense.

8          Now, you can state to the court the facts and

9   circumstances surrounding the commission of the offense

10  which is alleged to have taken place on or about early

11  1987 here in Guam, or you may defer to the prosecution

12  narrating to the court what the prosecution will

13  present in evidence to the jury if this case should go

14  to trial.  Which is your preference?

15                 (Pause while defendant conferred with

16                 counsel.)

17         THE DEFENDANT:  Yeah, I defer to the

18  prosecution.

19         THE COURT:  Mr. Black.

20         MR. BLACK:  Yes, Your Honor.  In part, if

21  this case would have gone to trial, part of the

22  evidence would have demonstrated that Joseph Manibusan

23  would get heroin from -- indirectly from Melwert

24  Tmetuchl, and basically when he had this heroin in the

25  house, that he would involve his brothers, in this case

1   John Manibusan, to help cut up the heroin, dime it up

2   into bindles or into caps, and that he would also

3   involve his brother John in distribution of some of

4   that heroin.  And that the evidence would show that

5   this happened in early 1987, in the District of Guam,

6   and that John Manibusan knew it was heroin at the time

7   he assisted his brother.

8           THE COURT:  Mr. Manibusan, you have heard the

9   Assistant United States Attorney state to the court

10  what the evidence will be if this case should go to

11  trial.  Do you agree with those facts as so narrated

12  to the court by Mr. Black, or do you take exception or

13  disagree?

14          THE DEFENDANT:  Yes, I agree, Your Honor.

15          THE COURT:  Very well.  Mr. Manibusan, once

16  again, how do you plead to the charge, guilty or not

17  guilty?

18          THE DEFENDANT:  Guilty, Your Honor.

19          THE COURT:  Very well.  The court, being

20  satisfied with the responses given during this hearing,

21  makes the following finding on the record.

22          It is the finding of the court in the case of

23  the United States against John G. Manibusan that the

24  defendant is fully competent and capable of entering

25  an informed plea,  and that the plea of guilty is a

knowing and voluntary plea, supported by an independent basis in fact containing each of the essential elements of the offense.

The defendant's plea of guilty is therefore accepted by the court, and he is now adjudged guilty of that offense, which is possession with intent to distribute heroin, in violation of Section 841(a)(1) of Title 21 of the United States Code.

The court will order a presentence investigation, and the presentence report arising out of said investigation will be due and filed in court two weeks before sentencing.

And unless there's any objection, the court will set this case, set this matter for sentencing Friday, December 7th, at 9:30 in the morning.

THE CLERK: That's Thursday.

THE COURT: Oh, Thursday. Thursday, December 7th.

THE CLERK: Yes, sir.

THE COURT: 9:30 in the morning.

You will be given the presentence report, you and your counsel, for your review at least two weeks before the sentencing date so that you can be prepared to make any comment or declare any approval or disapproval of the presentence report on the date of

1  sentencing. You understand that?

2          THE DEFENDANT: Yes, Your Honor.

3          THE COURT: You had been before this court

4  and you had been ordered detained by the court in your

5  first appearance on the charge contained in the

6  superceding indictment; is that correct?

7          MR. PHILLIPS: That's correct, Your Honor.

8          THE COURT: Mr. Black, what is the position

9  of the government as to matter of release?

10          MR. BLACK: The defendant is in custody on

11  local homicide charges that are pending, so it's a

12  pretty moot point at this point. In this case we

13  hold the same position as to the defendant is held

14  without bail at this time pending sentencing.

15          THE COURT: You are presently under the

16  custody of --

17          THE DEFENDANT: Rosario Detention, Your Honor.

18          THE COURT: Government of Guam?

19          THE DEFENDANT: Yes.

20          THE COURT: On a charge which is pending

21  before the Superior Court, which charge is murder in

22  the first degree; is that it?

23          THE DEFENDANT: Yes, Your Honor.

24          THE COURT: So the issue of release at this

25  time will be moot as far as this court is concerned

1    because even if you are released by this court, you

2    will still be in custody, so --

3          MR. PHILLIPS:  Your Honor, we would ask that

4    we be allowed to come back, should the defendant be

5    found not guilty across the street, we would ask that

6    the court here hear us at that time.

7          THE COURT:  Yes.

8          You understand that, Mr. Black?

9          MR. BLACK:  Yes, I understand.

10          THE COURT:  That if the defendant is found not

11    guilty in the Superior Court on the murder charge, that

12    he will have the opportunity to come before this court

13    and seek a release from this case.

14          MR. BLACK:  We'll cooperate with the defense

15    attorney in terms of setting a date, Your Honor.

16          THE COURT:  That matter will be noted in the

17    record.

18          Anything else?

19          THE CLERK:  None, Your Honor.

20          THE COURT:  Right now you will be returned to

21    the custody of the Government of Guam.  You are in the

22    custody of the local government.

23          THE DEFENDANT:  Yes, Your Honor.

24          THE COURT:  And your sentencing once again

25    is scheduled for Thursday, December 7th, at 9:30.

1    Court will stand in recess.

2        MR. BLACK:  Thank you, Your Honor.

3        MR. PHILLIPS:  Thank you, Your Honor.

4        (Proceedings concluded at 10:30 a.m.)

5                    *  *  *

6

7

8

9              CERTIFICATE OF REPORTER

10

11   CITY OF AGANA        )
                          ) ss.
12   TERRITORY OF GUAM    )

13

14       I, Wanda M. Miles, Official Court Reporter

15   of the District Court of Guam, do hereby certify the

16   foregoing pages 1-22, inclusive, to be a true and

17   correct transcript of the shorthand notes taken by me

18   of the within-entitled proceedings, at the date and

19   time therein set forth.

20       Dated this 7th day of April, 2005.

21

22       _Wanda M. Miles_

23

24

25

Wanda M. Miles
Official Court Reporter
District Court of Guam

# UNITED STATES DISTRICT COURT

District of _____  **GUAM**

UNITED STATES OF AMERICA
**V.**

**JOHN G. MANIBUSAN**

(Name of Defendant)

**AMENDED JUDGMENT IN A CRIMINAL CASE**

(For Offenses Committed Prior to November 1, 1987)

Case Number:  **CR-89-00104**
USM Number: **00488-093**

**MICHAEL PHILLIPS, Court Appointed Counsel**
Defendant's Attorney

**FILED**
DISTRICT COURT OF GUAM

APR 1 2 2006

**MARY L.M. MORAN**
**CLERK OF COURT**

## THE DEFENDANT:

**X** pleaded guilty to count(s)  **I** _____

☐ was found guilty on count(s) _____
after a plea of not guilty.

Accordingly, the defendant is adjudged guilty of such count(s), which involve the following offenses:

| Title & Section | Nature of Offense | Date Offense Concluded | Count Number(s) |
|---|---|---|---|
| 21:841(a)(1) and 18:2 | POSSESSION WITH INTENT TO DISTRIBUTE HEROIN (Occurring on or about early 1987, as charged in the sole count of the Information) | 1987 | I |

☐ The defendant has been found not guilty on count(s) _____
and is discharged as to such count(s).

☐ Count(s) _____ ☐ (is) ☐ (are) dismissed on the motion of the United States.

**IT IS THE JUDGMENT OF THIS COURT THAT:**

The defendant JOHN G. MANIBUSAN, is hereby committed to the custody of the Attorney General of the United States or his authorized representative for imprisonment for a term of twelve (12) years.

# ORIGINAL

In addition to any conditions of probation imposed above.  IT IS ORDERED that the conditions of probation set out on the reverse of this judgment are imposed.

*EXHIBIT 3*

## CONDITIONS OF PROBATION

While the defendant is on probation pursuant to this judgment, the defendant:

1) shall not commit another federal, state or local crime;
2) shall not leave the judicial district without the permission of the court or probation officer;
3) shall report to the probation officer as directed by the court or probation officer and shall submit a truthful and complete written report within the first five days of each month;
4) shall answer truthfully all inquiries by the probation officer and follow the instructions of the probation officer;
5) shall support his or her dependents and meet other family responsibilities;
6) shall work regularly at a lawful occupation unless excused by the probation officer for schooling, training, or other acceptable reasons;
7) shall notify the probation officer within seventy-two hours of any change in residence or employment;
8) shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any narcotic or other controlled substance, or any paraphernalia related to such substances, except as prescribed by a physician;
9) shall not frequent places where controlled substances are illegally sold, used, distributed, or administered;
10) shall not associate with any persons engaged in criminal activity, and shall not associate with any person convicted of a felony unless granted permission to do so by the probation officer;
11) shall permit a probation officer to visit him or her at any time at home or elsewhere and shall permit confiscation of any contraband observed in plain view by the probation officer;
12) shall notify the probation officer within seventy-two hours of being arrested or questioned by a law enforcement officer;
13) shall not enter into any agreement to act as an informer or a special agent of a law enforcement agency without the permission of the court;
14) as directed by the probation officer, shall notify third parties of risks that may be occasioned by defendant's criminal record or personal history or characteristics, and shall permit the probation officer to make such notifications and to confirm the defendant's compliance with such notification requirement;
15) shall pay any fine or obligation imposed by this judgment;
16) shall not possess a firearm or destructive device.

☐ IT IS FURTHER ORDERED that the defendant shall pay a special assessment of $ _____, for count(s) _____, which shall be due ☐ immediately ☐ as follows:

IT IS FURTHER ORDERED that the defendant shall notify the United States Attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid.

☐ The court orders commitment to the custody of the Attorney General and recommends:

Defendant's Soc. Sec. No.: XXX-XX-7890

Defendant's Date of Birth: XX-XX-1959

Defendant's Mailing Address: _____

_____

Talladega, AL

Defendant's Residence Address: _____

MARCH 16, 1990
Date of Imposition of Sentence

Signature of Judge

ROGER T. BENITEZ, DESIGNATED DISTRICT JUDGE
Name and Title of Judge

4/11/06
Date

### RETURN

I have executed this judgment as follows:

Defendant delivered on _____ to _____ at _____ with a certified copy of this judgment.

United States Marshal

By _____ Deputy Marshal